case on the Court's agenda this morning is James v. Varano, Appellate No. 20-1246. Good morning. Stuart Steinberg of Decker LLP. I'm here to introduce Grace Cho, who is an eligible law student admitted under Local Rule 46.3, who will be arguing the appeal today. Thank you. We welcome her and we thank you for your sponsorship and support of the case. May it please the Court, my name is Grace Cho and I represent the appellant, Mr. Paris James. I would like to reserve three minutes for rebuttal. That will be granted. Thank you. This is a classic case of the District Court misapplying the summary judgment standard. Mr. James presented numerous sworn statements in his verified amended complaint, showing his need for medical treatment and the inadequacy of the treatment that he received. Those statements created a genuine issue of material fact for a reasonable jury to find for Mr. James. But the District Court discredited those statements and drew inferences wholly in the defendant's favor. Let's focus on the excessive, I'm sorry, the deliberate indifference claim first. Your client recites in his verified amended complaint a variety of visits upon his arrival at SCI Cole. It seems like he was seen five times within his first week at the facility. How could that be deliberate indifference? He was seen, Your Honor, but that doesn't mean that he was treated. The treatment that he received in this case was constitutionally inadequate given his conditions. He had difficulty breathing, eating, standing. He was collapsing on the floor when he arrived at the Program Review Committee meeting. And you can see those, see the details on Joint Appendix 328 to 29. And these conditions were obviously urgent even to a layperson. And so it's your position if they were urgent to a layperson an expert's not needed, correct? Yes. Well, not necessarily, Your Honor. But it's not what your brief says. In the reply brief, we said we didn't need an expert. And when your client applied for counsel, he said he didn't need an expert. So do you need an expert or you don't need an expert in order to make your claim? Not in this case, Your Honor, because Lieutenant Master, as soon as he saw Mr. James, after he arrived at the prison, saw that he seemed weak and that he was visibly thin upon arrival and that he was speaking in an extremely low voice. And you can find those admissions on Joint Appendix 277 and 272. Why are those observations enough to, even as an objective matter, constitute a serious medical condition? Because it wasn't just Lieutenant Master's submissions, Your Honor. It was also what Nurse Daya and TA Davis noted on their own progress notes, as you can find on Joint Appendix 375. She said, according to her own notes, that he suffered from nausea, vomiting, diarrhea. TA Davis noted when he saw Mr. James a couple of days later, on October 17th, that he had chest pains, he had shortness of breath, and that he was going to order an inhaler and an x-ray as well. As you note, that's days after Master and Ro-Megan Sageti saw Mr. James. So what does that tell us about what was objectively seen and could be ascertained in terms of the gravity of his medical condition days earlier? So the emergent medical condition began when he started experiencing these symptoms. He had spent 36 hours at the infirmary before he arrived at the prison. He had received 10 IV fluids at the infirmary, and then just days after, seven days after he is admitted to the second prison, to SCI Cole, he has to go to the hospital. He was suffering from a objectively serious, visibly an urgent, serious condition that he needed treatment for immediately. But what Nurse Daya and TA Davis said was they said that they were going to treat James, but the so-called treatment they rendered fell far below constitutionally adequate standards. Are you sure it's constitutionally inadequate that they made all these directions? They told him to put in a sick call, they gave other observations, that it's not really a difference, almost like a malpractice claim? Because that's the challenge, I think, for you in part, is when does it become constitutionally deficient as opposed to more akin to a negligence claim? How do you distinguish it? What makes this so constitutionally deficient? Right, Your Honor. So in the third circuit, before the circuit, there was a case called Dermer v. O'Carroll, and we cite to that case on page 30 of our opening brief. So this court versed a summary judgment decision in favor of the defendant doctor who had sent an inmate, a patient who had suffered a stroke and was in need of physical therapy. He sent him to different doctors to see different doctors instead of giving him the physical therapy that he needed. And this court found that a reasonable jury could find that the defendant doctor had acted with deliberate indifference in simply sending him to numerous doctors instead of rendering him the physical therapy that was needed. And that is the case here. Mr. James was seen by five different people, that is true, but that doesn't mean that he was treated. And he is collapsing on the floor. He is, at the time of his admission to the hospital, he is foaming from the mouth. He is emaciated, according to a nurse who saw him at the infirmary after he arrived from the hospital. And he is constantly complaining of chest pains and shortness of breath and asthma. And the response that Nurse Dan T. Davis give is to say that we're going to treat you, to say that we're going to give you an up with that treatment, so-called treatment that they rendered. Specifically... So how can we tell the difference between deliberate indifference and medical negligence? Deliberate indifference, Your Honor, is, so Mr. James asserts, and the evidence creates a factual issue as to whether the treatment that Mr. James received constituted, for the and amounted to deliberate indifference. Don't we need an expert witness to explain to us, in a situation like this, what is negligence and what is deliberate indifference? I don't feel I have the medical... This is deliberate indifference. Your Honor, this circuit has said in Atkinson v. Taylor, which we cite on page four of our ply brief, that inability to eat, headaches, chest pains, difficulty breathing, dizziness, a sore throat, coughing, and production of sputum are sufficiently serious so as to warrant medical care. Those are exactly... But that's not deliberate indifference. That might be negligent medical. It is not negligent, Your Honor, because Mr. James, according to this court, suffered from a serious medical condition. And to see a man lying on the floor of his cell coughing, needing food, and saying things like, I can't breathe, I can't eat, I can't drink, and for the defendants, both the medical defendants and the correctional defendants, to pass him by and say that he does not need any treatment, we're just going to give him an inhaler or we're going to run a couple of x-rays. Nurse Daya, according to her own admissions on she never treated, I'm sorry, she did not conduct any tests between October 12th when she saw him and on October 17th, when the day before that Mr. James was admitted to the hospital. So it is not negligence. It is deliberate indifference. They knew about the seriousness and the urgency of Mr. James's condition and they failed to do anything about it. If it can be called treatment, the treatment fell far below constitutionally adequate standards. Can we move to excessive force for a moment? The force episodes are basically the being pulled by the handcuffs from the van, the gaining order when he was when he fell off the line and took a seat, and not leaving his cell. Force needed to be used by the officers to gain compliance. Why was this force either malicious or sadistic? The force was malicious and sadistic, because you have to look at the totality of the circumstances when looking at the application of the force. Mr. James was not just a normal healthy person. He wasn't failing to comply with the orders simply because he was disobedient or because he didn't want to comply, but because he was sick. He was asthmatic. He was having chest pains and shortness of breath and to take someone from the chair to grab him and then press him against his chest and on the wall was totally unnecessary and unreasonable. Do you know any circuit level cases where a court looking at the factors of excessive force are considering the physical condition of the plaintiff? I know there's some district court cases. Have you seen any at the circuit level? Not directly, Your Honor, but this court has stated in Giles that, and be site to this on page 38 of our opening brief, that force that exceeds that which is reasonable and necessary under the circumstances is actionable. So it is relevant that Mr. James was sick. It is relevant that he couldn't breathe. What if he was having a heart attack, Your Honors? Would it have been reasonable in that circumstance to take him, to grab him, to seize him from the chair and to press him against the wall? We argue that no. And Whitley, Your Honors can also look to Whitley. Whitley specifically directs courts to look to the need for the force and whether the inmate is a threat. So Mr. James's medical condition is certainly relevant and the amount of force that was used was not de minimis. Ms. Cho, don't we need to distinguish among the different incidents and the different defendants here? Because it's different people who just pull him out of the van. You're referring to, I believe, what happens next with being pressed up against the wall, but that's by different defendants than Mainz and Schmerfeld, who I think are the two who do the transportation. And if we do that, are you really contending that even standing alone, that that first interaction constitutes excessive force? Yes, Your Honor, because it could have been the cumulative effect of all of those instances of excessive force that resulted in Mr. James experiencing a lot of pain as a result. So the grabbing Mr. James by the handcuffs and seizing him out, taking him out of the van, that also constituted excessive force alone. Because Mr. James, according to his own words, said that after exiting the van, his heart and breathing became worse and his heart rate skyrocketed. And that's on paragraph 69 of Appendix 110. And he asserted these claims related to each of the instances of excessive force. For instance, being grabbed from the chair and putting in a restraint made it harder for Mr. James to breathe and his heart rate became worse. I was just asking to focus on the van, though. Okay, Your Honor. There's got to be force that's more than necessary for the situation. And in that situation, he communicated to them that he was unable to get out of the van by himself. So they pulled him out. Why is that not commensurate with the situation that they faced? Your Honor, in that situation, they could have taken him out of the van by not seizing him by the handcuffs. There were other reasonable methods of getting him out of the van, since there was an institutional purpose of him needing to exit the van. Instead of taking him by the They could have gotten a wheelchair. They could have called for medical. They could have relied on a staff who knew, who had the expertise to treat and to take Mr. James out of the van with the least amount of force that was necessary. But that was not, that is not the case here. Mr. James was in extreme pain as a result of... Your Honor, I realize I... You can finish your answer and then I'll see if Judge Roth has any questions. So it was excessive force because the force that was used on Mr. James was not necessary. It was not necessary for the defendants to have taken him by the handcuffs and pulled him out of the van, yanked him out of the van. That was unnecessary. They could have used a wheelchair. They could have guided him off the van by holding him by the sides with his arms and then gently leading him onto the ground. So for those reasons, I invite any questions at the... Judge Roth, do you have any questions for counsel? I have no further questions. Thank you. I do have two quick ones. Means and Schermerfeld, who Judge Krause was asking about, are they John Doe one and two? Because they're not in the caption. There's no evidence they were ever served at the summons. Yes. Yes, they were. Yeah. Okay. And the second question I have is, what evidence do you have to show that Elsie, Moser and Tripp were aware of the complaints that your client purportedly made about them? So, Your Honor, there's a quick... I will answer quickly. So Mr. James, in his verified complaint, said that the officers verbally threatened him. And you can find that on Joint Appendix 141. And there's also Officer Tripp's misconduct report in which he said that Mr. Moser and I went to the inmate cell to ask him why he was claiming that we had threatened him. And is it your position the district court did not take into account that report? Yes. That's correct. Those were my two questions. We'll have you back on the button. Thanks. Good morning, Your Honors. I'm Jeff Palladino. I represent the appellees that are employed by the Pennsylvania Department of Corrections. In other words, I represent all the officers and the nurses, other than the only two appellees I don't represent are their physician's assistants who are contracted, Physician's Assistant Daya and Davis, and they're represented by my colleague here. Your Honor, I want to first... I want to address all the issues that the appellant raised. But first, I want to go right to the medical indifference piece here. And I think that there is a problem. And it presents a problem with their argument. We did all the discussion about medical indifference, and we didn't talk about the diagnosis that Mr. James ultimately received when he got to the hospital on October 18th. And it was an acute exasperation of asthma. What they want to do is they want to link... They want you to... It's undisputed that he was... He needed emergency medical care on October 18th. But they want you to infer to that that he presented the same way, or close to the same way, when he arrived at Cole on October 11th, on October 12th, when he was seen by another physician's assistant. Well, if we are to take account of his statements in the verified complaint, as well as that diagnosis, which clearly reflects a serious medical condition, why couldn't a reasonable jury draw the inference that he did present in an objectively serious fashion those earlier days? There's no medical evidence to substantiate that. I would say that on October 18th, he had an asthma attack. That's undisputed. On October 17th, it's also undisputed. The day before, that physician's assistant, Davis, listened to his lungs and said they were clear and it's an unreasonable inference to infer that Mr. James presented in the same condition, or as close to the same condition, on October 18th, or even that the problems he was having were even related, because he had other things going on here. He had the weight loss, you know, maybe linked to the thyroid condition, which may not be emergent at all, which requires testing. When is the first time he actually gets treatment? We know that in his first two days there, he's seen by three or four different health care providers, and people seem to be providing some sort of observational examination, but is there any evidence in the record that they actually, like, listened to his lungs, as you said, occurred on October 17th in those first two days, or provided any other actual treatment? Well, Your Honor, he was seen immediately the same day he came off the and classified his need for medical treatment as routine, and ordered that he be seen by the chronic asthma clinic. Can you tell us whether or not that includes, like, actually, like, is it an oral questionnaire that's being completed, or is there actually, like, a stethoscope put on him to listen to his lungs? I would say that there would not have been a stethoscope at that point, that it would be a medical intake, like a triage, like you would get when you go to the emergency room. And I will let my co-counsel, you know, argue about the specific medical treatment that he received the very next day. The very next day he got off the bus, he was seen by a physician's assistant. But I wanted to point out that... Weren't those examinations just through a door? You know, I know for a fact the medical record on October 17th by a physician's assistant, David, says that he listened to his lungs, whether he listened to them through... I would assume that he took the stethoscope and had Mr. James place the stethoscope on his heart, and through the... There's an aperture, there's an opening in the door that they can conduct these medical examinations. And, you know, in this day of COVID, you know, we have telemedicine that doctors are able to... This happened in October 2012. Correct. But, you know... We have a COVID issue then. It's not particularly a COVID issue, but, you know, in this day, we have doctors that adequately perform examinations through telemedicine, and that's accepted. Well, we're not able to make assumptions in doing our review of a summary judgment decision, and certainly not assumptions as to inferences taken against the non-movement, right? Yeah. You know, you would assume, for the sake of the record, that James made complaints. And... But you would not make an assumption about how the officers, how he presented to the officers, how... Or the nurses, and how the officers and nurses make conclusions about how... You know, deliberate indifference has a subjective prong. They have to actually know, and for it to go to a jury, the need has to be obvious. There's nothing in the record... Counsel, when we look to the evidence in the record, and his statements in his verified complaint, which reflect that he not only expressed verbally what he had previously experienced and was experiencing, but also visibly lying on the floor, being unable to get up, gasping for air, frothing at the mouth. If we accept those statements, why isn't there a disputed issue of material fact here, as to both the seriousness of the medical condition, and given the statements that he includes in his verified complaint that he alleges were made by various of your clients, the subjective component also satisfied for purposes of overcoming summary judgment? Your Honor, I would say there's nothing in it. It's not just enough for him to show that he needed medical care, because he was able to get medical care. He was able to get examination once he got to SEI Cole. For instance, on the bus, they would have had to determine that... They actually knew that whatever medical condition he had was so serious, that they would have actually had to divert the transport, or stop the transport, to get him sent to a hospital. And when he got to the hospital, who knows how long it would have taken him to get care, rather than just completing the... Well, doesn't that depend on how he manifested in the van, and what he told them? And the issue here is, the district court seems to have ignored completely the statements in his verified complaint, and concluded that the position of the correctional defendants and medical defendants was undisputed. How can it be undisputed, given the statements in the verified complaint, which our case law says you take as an affidavit? Yeah, well, let me first address the argument they raised, the overall argument they raised about how the district court weighed things, because I think that they read the opinion wrong, incorrectly. What the district court did here, when the judge wrote the opinion, was they set forth the defendant's, the appellee's, version of the facts first, and they said they're... And they applied the local rule dealing with having to file a concise statement of material facts, and then they said it's undisputed, except where otherwise noted. So what the judge did was footnote it where there was a disputed fact. She wasn't ignoring... Did the district court do that on the excessive force claim too? Did the district court actually consider what was in the verified complaint concerning the yanking by the cuffs, the pinning against the wall, the dragging from cell to cell? Does the district court actually acknowledge those facts? Yeah, the district court applied the Whitley factors, and found that Mr. James wasn't injured, that there was an undisputed need for some force. I mean, he couldn't stay on the bus forever. Did the district court consider his physical complaints when this force was being applied? I.e., I'm too weak to stand, I can barely breathe. You know, I don't think that... I don't think, Your Honor, when you look at the Whitley factors, the reason why the injuries he sustained are important is because it goes to the amount of use, it goes to the officer's mental state. So in order for the medical issues to be important to the use of force, the officer would actually have to know that James was suffering a medical episode and use force with the intention to make it worse. Isn't that a fact dispute then for the jury to decide? Not based on this record, Your Honor. I don't think that there's anything in the record to suggest that the officers knew. We have to accept as true though, every time he says in his verified complaint that he told them, I can't breathe, I'm too weak. We also have to accept as true his description of the various force that was applied. If we have to accept all that as true, don't we have to send this back for a jury to consider? Your Honor, I wish that every time an inmate told you fact X, that the officers could accept it as the truth. But there's a reason for secondary gain. So the officers have to use their own judgment and make a determination. Here at least there's some corroboration of what he said. Some could say you can't rely on a self-serving affidavit. I understand that position. But some could say there has been some corroboration here because we have medical records or medical personnel corroborating the fact that he had these medical complaints. They prescribed an asthma clinic. So had let this case go to the jury on the excessive force claim, if nothing else. No, because it's a, you know, it's a high standard to show sadistic and malicious intent. And you have to look at all the Whitney factors and there was nothing in here to indicate, I mean, there's an undisputed need for force, some need for some force and all the Whitney factors weigh in favor of, of our defendants. So they, you have to look at the record as a whole. Set aside the, the pulling him out of the van, how is there an undisputed need for the use of force of slamming him up against the wall or dragging him when he can't walk to the RHU? Because you would not assume on summary judgment the officers perceived things the way that James concluded were going on. So, you know, the officers perceived, perceived him as a, as someone who's been uncooperative. And they, you know, if he couldn't go where he needed to go, he required some assistance. The force that was used. He also attributes to them statements, quite explicit statements that indicate that they're just doing a sort of show of their power. And the master is the one who will make the decision about whether he ever gets medical treatment or not. With the statements that he alleges, again, why, granted, perhaps a jury could find in favor of your clients and find them credible in terms of their version of events. But why isn't there a, here a material issue of disputed fact? Because it's undisputed that the force that was used was minimal. He didn't suffer any physical injuries. At most, their argument is that he, they exasperated his current illness. And that's not really supported by the record either. But, and it's not like the eggshell skull rule. You know, the reason why it's not a negligence case where you're liable for unforeseen damages. The reason why the amount, the nature of the injury metered out is important is because it goes to the defendant's mental state. So they wouldn't be, you couldn't, you couldn't use unforeseen medical episodes later to determine that they used sadistic and malicious mindset. Judge Ross, do you have some questions? I have no further. I have just one more counsel for you on the retaliation claim. Yes. Your adversary pointed us to Mr. Tripp's report of November 29, 2012, as basically an indicator to demonstrate that these officers were aware of Mr. James's complaints. The district court says there was no evidence. How can we affirm the district court on that in light of that, the district court's conclusion on that point in light of that incident report? Because, Your Honor, if you take a look at the misconduct report, what the appellate, wants us to do is only focus on the first half of the first sentence. And while Mr. James is entitled to reasonable inferences, it's not fair to ignore the rest of the report, which explains the first half of the first sentence, that the officers were, in fact, there to search the cell and that Mr. James... Let me just direct your attention to where I'm looking. If you look at the incident report, I'm going to quote and then read to you. Tripp writes, quote, I asked him, quote, if he knew who I was, use an abbreviation, because I had never talked to him before now. And he stated, you are Mr. Tripp. Mr. Moser then asked him, why are you saying we threatened you? Question mark. Did the district court consider that piece of evidence when it concluded there was no evidence that they knew about the threat? They considered the entire record. The judge considered the entire record here. And it's important to point out that these claims are easily gamed. They're easily retaliation. And this case may be instructive because what's undisputed is Mr. James did not want to deal with the cellmate. So what he did was he sought out people to and he has no right to not have a cellmate. So he sought out officers who had nothing to do with his medical complaints and engaged in protective conduct to them and started complaining to them. You need to help me with my grievance to figure out, you know, so I know who to sue. They didn't help him. So he went back to them again and started accusing them of. That's not my question. My question is, were they on notice based on this? Doesn't this piece of evidence undermine the district court's conclusion they had no reason to know of a complaint? You're giving me motivation. I'm asking about notice. I'm sorry. This misconduct report taken as a whole does not establish causation by itself when you analyze the causation strictly. Under the retaliation. Under the retaliation portion. Okay. For the record, I was reading from 434. Okay. Counselor, thank you for your arguments. Thank you. Good morning, Your Honors. Damaris Garcia, Fredia Police Physician's Assistant Jennifer Daya and Brian Davis. And again, I'm here to only discuss the medical indifference claim as it pertains to those two individuals. Just a matter to be brief, Ms. Daya saw or rather did a visual inspection of the appellant on October 11, 2012. I believe that was the year. And in doing that, she also reviewed medical records, ordered some testing and so that it could follow its normal course of medical procedure. Second to that, on October 17th of that same year, Mr. Davis actually physically examined him, ordered chest x-rays. Both of them actually, I left this out, both of them diagnosed him with mild intermittent asthma. And for the medical care was provided by Mr. Davis. Both of Davis and Daya only saw the appellant one time. What I would like to address here is I've heard a lot about the affidavits that were attached to the amended complaint. I'd like to argue that with regard to this, his Eighth Amendment claim of medical indifference, that you would need much more to support his claim. His claim for medical indifference requires a two-pronged test that was addressed in the Estelle and many other cases following that, that there's an objective and a subjective inquiry. The objective inquiry is was there a serious medical condition? And the subjective inquiry would be whether or not those treating physician's assistants should have been aware of that medical, serious medical condition or did they actually know that the condition was serious? So it goes beyond a mere negligence, an accident of sorts. In this case, your honors, I would grant, I would move to you that none of that the appellant has failed to meet his burden to prove, to get past summary judgment. Is that as to the subjective prong or are you arguing that he didn't have a serious medical condition given what actually transpired here? I actually argue that it is both, it's with regard to the objective prong, but would have probably gotten him over the subject summary judgment standard would have been an expert report. On its face, and I believe it's in the case Messini, Fuentes, and Boring, state that if it's not on its face apparent that it's a serious medical condition, for instance, a gunshot to the eye, I believe is what I read in one of the cases, that one that a lay person would not be able to determine is a serious medical condition that an expert testimony is needed, expert report is needed of some sorts. That was not done here. And according to your the appellant declined the need for an expert report, which again I think was fatal to he being able to overcome that summary judgment standard. I'm sorry, was an expert offered to when you say decline, was it offered by the district court? I'm sorry, I may have misheard your honors earlier, just a moment ago when during my co-counsel's arguments, but I thought to hear that during the appellant attorney's presentation that she agreed that her client declined the need for an expert report. When he applied for counsel, he said he didn't need an expert, and then in their reply brief to us, they said an expert wasn't necessary. Right, okay. So it's not like one was offered, it's just the representations where one was not necessary. Right, excuse me, excuse me. That's exactly what I was trying to get across, is that he did not have an expert report. He did not seek an expert to show that his condition was in fact serious. And at that, the first prong, you cannot... Don't we have to accept his description and his verified amended complaint about his condition, where he said I'm weak, I'm having difficulty breathing? Wouldn't a lay person know that someone's an extremist and has a serious condition? Like what do you need an expert for for that? Well, I agree with part of what you said until the end. Yes, you can accept what he said, you can accept his complaints, but does it make it serious is a wholly separate question. That again, in this particular situation would require the need of an expert to determine. It's not clear on its face, given his complaints and his long medical history pertaining to the facts of this case, that the condition that he was claiming of was in fact serious in such a serious nature to again, be violative of the, of the... Even though your own clients examined him, diagnosed him as being asthmatic, and he had an asthma clinic, like demonstrates to me that your own clients recognized that he was having a serious issue that needed treatment. But your honor, is mild intermittent asthma considered a serious medical condition or is it just a medical condition? And then once we get beyond that, you have, he has to make a showing that at least with regard to Daya and with regard to Davis, that they knew that it was serious and disregarded it, willingly disregarded it. I understand your position that an expert was necessary. But doesn't that just point up that the need for appointment of counsel here? And perhaps counsel ascertaining the need for an expert. I, and I certainly, you know, understand the position of your colleagues on the other side of the aisle who want to, you know, argue on the one hand summary judgment was incorrectly decided even without an expert, but also say, you know, in their briefs that the matter would require factual investigation and may benefit from a medical expert. And perhaps counsel will clarify, you know, on, on rebuttal, but to the extent that argument is, is preserved, can you speak to the, the issue of appointment of counsel here? Because if we determined that the denial of those three requests by the district court was error, then there would be an entirely new record developed on remand, right? Right. And I do agree with you. However, counsel has been, has been provided and counsel has stated that they also agree that no expert testimony or expert report was needed to prove the seriousness of this medical condition. So it's my opinion, and I submit to the panel that they waived that, that argument. Well, we'll, I'm sure hear from counsel as to exactly what, what they were saying as to whether it related to summary judgment or, or proof of the condition per se, but your own argument that, that an expert is needed, doesn't that point up the, the, the, an error on the part of the district court in denying his motion for appointment of counsel? Your Honor, I believe that that is an issue to be addressed. No, I don't, I don't, I don't believe so, Your Honor. I don't believe so. I think that he had the, he had the right to represent himself and, and according to this, and when this appeal came forward, he had counsel assigned to him and their own, and his own counsel agree with him that he did not need an expert. So I don't believe that the district court made any error because that, their decision with regard, I'm sorry, I don't believe that the district court made any error because both the appellant and their counsel both agree that there wasn't a need for an expert to prove the seriousness of the medical condition. However, I'm here to argue that there is case law out there that says that this, this type of medical condition, or at least the, or the evidence that's been put, put before the court isn't substantial enough to, on its face, be deemed serious without an expert. Again, there have been, there's a long list of cases, people that have claimed nerve damage, people that have claimed facial lacerations, broken noses. None of those conditions were considered serious. This particular appellant had intermittent asthma and he was treated for that. Now, whether or not he disagrees with the kind of treatment that he received, whether or not he's not happy with the kind of treatment he received is for a different argument. That would be a negligence claim at best. But this year, we are here for a medical indifference, which requires a showing that, one, he suffered a serious medical condition, and two, that my clients were indifferent to that, that they knew it and disregarded it, or that they, at the very least, should have known that it was a serious medical condition. I don't think that there's any evidence in the record to date that would support that, either of those prongs, to support either of those prongs. Thank you, counsel. Judge Roth, do you have any further questions for counsel? I have no further questions. Judge Cross? Okay, thank you, Your Honors. Your Honors, I want to go back to a point that Judge Roth made in my presentation. Judge Roth, you made a point about deliberate indifference, and deliberate indifference is a question for the jury. It's a question that goes to the state of mind. It is a, in this case, based on the dispute and based on the plenty of record evidence that Mr. James has pointed to, both in his own admissions, I'm sorry, the defendant's own admissions and Mr. James's verified complaint, that a reasonable jury can find that Mr. James was treated to, not to, not to a constitutionally sufficient standard. And the defendants have not pointed to any record evidence that actually show that Mr. James was treated according to Nurse Davis and T.A. Davis, Nurse Daya and T.A. Davis, based on the notes that they made about prescribing him an inhaler, saying that she will monitor him. There was actually no evidence in the record that the defendants have pointed to in their response briefs or in the record that he was treated, that he received the treatment that he was promised, saying that you'll treat someone, promising them treatment. But anyway, in his own letter to, in his grievance, he actually says that he received an asthma clinic between October 15th and October 17th. But at that asthma clinic, Your Honor, there was nothing done other than a promising of being given an inhaler and a chest x-ray. So if you see on Joint Appendix 377, T.A. Davis's notes show that an asthma inhaler was indeed ordered on that date, on October 17th of the asthma clinic, but he actually didn't receive one until the day after he arrived from the hospital on October 19th. Doesn't he reject it? Doesn't he reject the inhaler at some point? He did not reject it, Your Honor. He did not receive it until he came back from the hospital. After he got back from the hospital, did he reject it, say he didn't need it? That was not connected to the facts of this case. So I believe a year after... We're talking about the same consequence of, I'm sorry, continuous days, October 11th and 12th through October 18th, when he's offered an inhaler and he's like, never mind, after he'd come back from the hospital visit. Am I correct? No, he did receive it, Your Honor, and he did accept the inhaler. Can I ask you about the retaliation claim? What adverse action does he claim occurred? The adverse action that Mr. James is claiming that occurred is that Mr. James sent letters to the office, to the central office. I know that's the retaliation. What is the adverse action he claims that occurred after he made his complaints? That the officers, Officer Moser Tripp, came to his cell and said that we are going to send him to the RHU. We're going to send him to the restricted housing unit as a result of you sending those letters. And they knew about these complaints. They went to the cell to ask him about them. I got that. I just, I wanted to know what the adverse action was. I got that. Thank you. You focused your argument on what the current record shows. Are you waiving the argument that it was error to fail to appoint counsel? No, we are not waiving that, Your Honor, but to the extent that an expert was required, was necessary to understand Mr. James's medical claims, then counsel should have been appointed. But an expert was not needed in this case. What is the district court to do when a petitioner says, I don't need an expert? Is the district court supposed to say, I know better? I don't know what we're supposed to tell district court judges under those circumstances. Well, that's an issue for the jury. Whether Mr. James was suffering from a serious condition. I'm following up on Judge Krause's question about the appointment of counsel question. And so I'm asking you, a district court judge gets a request for counsel multiple times, says I don't need an expert. Is a district court judge supposed to say to a petitioner, I know better, I'm going to appoint an expert? I mean, isn't the district court allowed to rely on someone who chooses to bring the case to make their decisions? Mr. James did not need an expert for, because there were lay people that a deputy superintendent of the Leskowich and Lieutenant Master, who saw that he was in serious, urgent need of medical care. But to the extent that an expert was necessary, an expert should, excuse me, a counsel should have been appointed because it would have made things easier for Mr. James. Are you now saying that it's only to the extent an expert was needed, that counsel was needed? Or even aside from whether an expert was needed or not, are you arguing that counsel should have been appointed? I'm not clear on the argument. The latter, Your Honor. So it's not just to the issue of the expert, but it's also the complexity of the case. Mr. James asserted three different constitutional claims. The misconduct spans nearly two months. There are over dozens of defendants involved in this case. It was a very complex matter for Mr. James to have handled on his own. Can I ask one question about, on the Tebron factors, and specifically his ability to retain counsel? What can you tell us, and can we find anything in the record as far as the settlement and whether he received funds that would allow him to retain counsel? So Mr. James, according to his complaint, has limited access to the prison library. He sometimes is limited access. That's not Judge Cross's question. Judge Cross is asking, did he have the means to seek out counsel? And I think secondarily, did he ever make an effort to look for an attorney? And specifically, he received a settlement, which his prison inmate account suggests he got like $9,000 from the Pennsylvania authorities for a different case. So I think, sorry to interrupt you, Judge, but I just want to make sure you get answers to the question you're looking for. Thank you. No, I believe he did not, Your Honor. So he hasn't collected on any judgment or the settlement? No, I don't think so, Your Honor. Have you looked at his inmate account where he applied for informal partner status? No, I have not, Your Honor. Do you know whether or not he made an effort to try to find a lawyer to represent him? I am not aware of any efforts. Thank you. Judge Roth, anything further for counsel? I have nothing further. Judge Cross? No, thank you. No, thank you. Thank you for your arguments. You two should probably be studying for the bar, yes? Yes. Well, we thank you, and we thank, of course, the firm for sponsoring counsel, and we thank the defendants for your arguments as well.